IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JON H.,[1]<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. 2:24-cv-00607-HL<br><br>**OPINION AND ORDER** |

HALLMAN, United States Magistrate Judge:

    Plaintiff Jon H. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision of the Commissioner is affirmed.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.      Plaintiff's Application**

Plaintiff alleges disability based on right knee problems, bulging discs in his back, arthritis, atrial fibrillation, high blood pressure, spinal stenosis, sciatica, and his right leg being a

different length than his left. Tr. 89, 830.[2] At the time of his alleged onset date, he was 58 years old. Tr. 88, 829. He has completed high school and can perform his past relevant work as an estimator. Tr. 216, 769.

Plaintiff protectively applied for DIB March 1, 2018, alleging an onset date of August 4, 2017. Tr. 89. His application was denied initially on March 12, 2019, and on reconsideration on April 13, 2021. Tr. 97-98, 117. Plaintiff subsequently requested a hearing, which was held on March 17, 2020, before Administrative Law Judge ("ALJ") Steven De Monbreum. Tr. 39. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 39-86. A vocational expert ("VE"), Mark Mann, also testified. Tr. 72-86. On April 6, 2020, the ALJ issued a decision denying plaintiff's claim. Tr. 88. Plaintiff requested the Appeals Council review ALJ De Monbreum's decision, which was denied on September 22, 2020. Tr. 8-13. Plaintiff then sought review before this Court. On order of this Court, the ALJ's decision was remanded for further proceedings. Tr. 873-88. A second hearing was held on November 9, 2023, before ALJ Katherine Weatherly, with Jaye Stutz testifying as the VE. Tr. 781-800. On December 11, 2023, the ALJ issued another decision denying plaintiff's claim. Tr. 741-80. Plaintiff then sought review before this Court.

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 12).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III.  The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 4, 2017, through his date last insured of December 31, 2022. Tr. 746.

At step two, the ALJ determined that plaintiff has the following severe impairments: "obesity, degenerative disc disease of the lumbar spine, osteoarthritis of the right knee, and cardiac arrhythmias." Tr. 747.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 755-56. The ALJ then resolved that plaintiff had the RFC to perform light work with the following limitations:

> [He] can stand and/or walk four hours per eight-hour workday; perform occasional pushing and/or pulling, such as operating foot controls with the right lower extremity; he could frequently climb ramps or stairs; he could occasionally climb ladders, ropes, or scaffolds; he could occasionally kneel, crouch, crawl, and stoop; he was to avoid exposure to vibration and workplace hazards such as dangerous machinery or unprotected heights.

Tr. 756.

At step four, the ALJ found that plaintiff could perform his past relevant work as an estimator. Tr. 769-70. Because the ALJ found that plaintiff could his past relevant work, the ALJ did not make alternative step five findings. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 771.

## DISCUSSION

Plaintiff argues that the ALJ committed three errors: (1) improperly assessing plaintiff's cervical spinal condition at step two; (2) failing to identify specific, clear and convincing reasons for rejecting plaintiff's subjective symptom testimony; and (3) improperly rejecting the medical opinions of Shari Engstrom, M.D., Ramona Bates, M.D., and Kevin Cuccaro, D.O.

I.   **Step Two**

Plaintiff first argues that the ALJ erred by failing to address his cervical spinal condition at step two, which led to an incorrect RFC determination. Pl.'s Br. 5-6.

At step two of the disability evaluation, the ALJ determines if a claimant has "a medically determinable physical or mental impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(ii). At step two, a claimant is not disabled if the claimant does not have any medically severe impairments. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 20 C.F.R. § 404.1520(a)(4)(ii). A claimant waives consideration of an impairment at step two by not raising it as a basis for disability before the ALJ. *Terri E. v. Comm'r Soc. Sec.*, No. 3:18-cv-01382-IM, 2020 WL 774361, at *5 (D. Or. Feb. 18, 2020) (citing *Greger v. Barnhart*, 464 F.3d 968, 973-74 (9th Cir. 2006)).

Here, the ALJ found that plaintiff had multiple severe impairments at step two, including obesity, degenerative disc disease of the lumbar spine, osteoarthritis of the right knee, and cardiac arrhythmias. Tr. 747. Plaintiff argues that the ALJ improperly failed to address his cervical spine condition. Pl.'s Br. 5-6. In support of his argument, he cites to an MRI conducted on September 8, 2021, showing foraminal narrowing. Pl.'s Br. 6 (citing Tr. 850). However, plaintiff never alleged disability due to a cervical spine condition at either of his two hearings, nor in either of his applications. Tr. 39-86, 89, 781-800, 830. He has therefore waived any argument that ALJ erred with respect to step two.

II.  **Subjective Symptom Testimony**

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons to reject his symptom testimony. Pl.'s Br. 6-11. This Court finds that the ALJ's rejection of plaintiff's testimony concerning his medical conditions was supported by substantial evidence.

A.Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms.

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

B.Plaintiff's Testimony

Plaintiff reported that he could not work on a regular, full-time basis because of right knee problems, bulging discs in his back, arthritis, atrial fibrillation, high blood pressure, spinal

stenosis, sciatica, and his right leg being a different length than his left. Tr. 89, 830. At his first hearing, he testified that he had trouble doing his past employment as an estimator because he had to walk long distances and got winded easily because of his atrial fibrillation, experienced pain in his right knee such that he needs a knee replacement, has arthritis in both hips, his right leg being shorter than his left, issues with his back, swelling and varicose veins in his right leg. Tr. 52, 55-57. He further testified that he can only stand for five to ten minutes at a time before needing to rest, that he has problems with balance and coordination, that he sometimes uses a cane, including back when he was working, and that he sometimes has to recline when his knee flares up. Tr. 58-59. He also stated that he cannot carry more than two gallons of milk, that he drives, and that he spends extended periods of time sitting. Tr. 62-63, 65-66, When asked about his daily activities, plaintiff testified that he can vacuum or do laundry for ten to fifteen minutes before needing to stop and rest for 20 to 30 minutes. Tr. 60. He further testified that he can go grocery shopping without physical issues, and that he will sometimes clean the bathrooms and scrub the toilets but he can't get "underneath," because he has trouble getting down to his knees. Tr. 60-61.

At his second hearing, plaintiff reiterated much of his earlier testimony, while adding that in addition to his bad back, arthritic hips, and bad right knee, he also had a meniscus tear around 2010, which is when he first started using a cane on and off, even though he was building fences at that time, before he was promoted to an estimator. Tr. 789, 792. As for medications, at different periods, plaintiff was taking metropolol, coumadin, propofol, diltiazem, and hydrocodone. Tr. 52, 57, 69-70, 791.

The ALJ determined that his medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 758. The ALJ reasoned that plaintiff's testimony concerning his physical limitations was inconsistent with his activities of daily living, his treatment, and other objective medical evidence. Tr. 756-69.[3] Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons to discount his testimony, that the ALJ improperly relied on conservative treatment, and that his activities of daily living did not contradict his testimony. Pl.'s Br. 6-11. This Court affirms because the ALJ's rejection of Plaintiff's symptom testimony as inconsistent with the medical record was supported by substantial evidence.[4]

C. **Inconsistency with the Medical Record**

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. §

---

[3] Plaintiff only raises arguments regarding his physical impairments. Accordingly, this Court only addresses Plaintiff's physical conditions.

[4] Because the ALJ provided at least one valid reason for discrediting plaintiff's symptom testimony, this Court need not resolve any other dispute regarding the ALJ's other bases for discounting plaintiff's testimony. Had the ALJ erred in rejecting Plaintiff's symptom testimony based on conservative treatment or his activities of daily living, any error would be harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (finding that the ALJ's reliance on invalid reasons was harmless error because the ALJ provided other valid reasons that support the ALJ's credibility determination); *e.g. Jones v. Saul*, 818 F. App'x 781, 781-82 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and thus "[a]ny error in the ALJ's additional reasons for discounting [claimant's] symptom testimony [were] harmless").

404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Here, the ALJ concluded that plaintiff's testimony regarding his right knee pain, balance issues, need for a cane, inability to stand or walk for any significant length of time, and carpal tunnel were contradicted by medical records showing that his reported limitations were not as severe as reported. Tr. 756-69. As support for these conclusions, the ALJ pointed to records showing that in 2017 and 2018, despite reports of pain and an inability to engage in physical activities, he reported increasing his gym activity. Tr. 449, 463, 473-74. At a consultative examination in December 2018, plaintiff was observed with a mildly stiff but nonspecific gait, had no issues transferring between sitting and standing, was able to tandem heel walk but refused to walk on his toes and was only willing to squat a quarter of the way down. Tr. 635. While he did have some tenderness to palpation in his back and some pain in the bilateral sacroiliac joint area, there was no significant pain with axial compression or rotation. *Id*. Upon inspection of his knees, plaintiff had no swelling or deformity, no increased tenderness or crepitus or increased warmth. *Id*. Plaintiff also had a negative straight leg test, 5/5 strength in his lower extremities, fully intact reflexes, and full sensation. *Id*. While plaintiff complained of bulging discs, there were none on examination, no records of bulging discs, herniation, or stenosis, and while he did complain of bilateral lower extremity abnormal sensation, it was not consistent with stenosis. *Id*. Following testing, no right knee instability could be detected, and while he experienced moderate pain in his right lumbar area, he was assessed as being able to stand and walk for four hours in an eight-hour day, and sit for an unlimited amount of time, despite stating sitting exacerbates his

pain and also saying he normally sits for extensive periods of time with no issue, and he did not need an assistive device. Tr. 65, 272, 635-36, 1001.

The ALJ also considered records beginning in January 2020, in which plaintiff reported both being in pain and not being in pain. Tr. 696-97. He was also observed as having normal gait and station, no need for an assistive device, full range of motion, no joint abnormalities, swelling, or redness, but he did have an edema in his right leg as compared to his left. Tr. 697. In July 2020, plaintiff began physical therapy with the goal of pain relief. Tr. 3314. By the time he finished treatment in September 2020, he reported a 50 percent improvement, with other improvements in his range of motion and increased strength. Tr. 3343. In November 2020, plaintiff reported that his physical therapy was "very helpful," that he was continuing with his home exercises, and he was going on walks with his wife. Tr. 3854, 3857.

The ALJ continued with records from October 2021, wherein plaintiff underwent electromyography and nerve conduction studies of his upper and lower extremities which showed L4-5 radicular neuropathy on his right, moderate right carpal tunnel syndrome, and mild to moderate left carpal tunnel syndrome without evidence of peripheral neuropathy. Tr. 4299. He was also noted to have reduced sensation to vibration and temperature in his feet, but with full motor strength and a wide-based gait. Tr. 4307-08. That same month, he also underwent another consultative examination. Upon testing, he had no balance problems, had a mildly antalgic reciprocal gait, 5/5 strength in his extremities, negative straight leg test, could squat and rise with some difficulty, could transfer from sitting to standing and get on and off the exam table without difficulty, could walk on heels and toes with difficulty, but could not perform tandem walking nor hop on one foot bilaterally. Tr. 4329-31. He also had intact reflexes and, despite mild to moderate findings of carpal tunnel, he had no difficulties fingering, grasping, and handling both

large and small objects, nor did he have any loss of strength in his hands and fingers. Tr. 4330-31. While plaintiff stated he could not stand or walk for any length of time, he was assessed as being able to stand and walk for four hours in an eight-hour workday. Tr. 4334. Plaintiff also stated his back pain was exacerbated by prolonged sitting yet testified that he had no problem sitting for extended periods of time. Tr. 65, 272, 635-36, 1001, 4334.

Records from December 2021 through August 2022 were also included in the ALJ's analysis. For example, in December 2021, plaintiff underwent right knee arthroplasty, followed by physical therapy, and he reported doing relatively well at his first post-operative checkup, even though he reported some pain. Tr. 4754. Six weeks later, in February 2022, plaintiff reported doing very well, being happy with his recovery, and no longer taking any narcotics for his pain. Tr. 4753. In March and June, plaintiff continued reporting doing well. Tr. 4741, 4749. In May, plaintiff did complain of some gait and balance disturbances due to a lack of sensation in his feet, but testing showed no weakness, 5/5 strength, intact reflexes, grossly intact sensation, and negative straight leg test. Tr. 4745, 4747.

In June 2022, plaintiff underwent an MRI of his lumbar spine and electromyography to determine if he was suffering from a possible neuropathy. Tr. 4739. Testing showed that while he had some gait disturbance and loss of sensation, it was not due to spinal compression but to his past heavy use of alcohol, and he was started on Lyrica. Tr. 4739-40. In August, he reported that his medication was helping. Tr. 4793.

Based on the record before the Court, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom testimony based on contradictory medical evidence and efficacy of treatment. The ALJ's citation to these objective findings is "sufficiently specific to permit the court to conclude that the ALJ did not

arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958 (9th Cir. 2002). This objective evidence is therefore a clear and convincing reason, supported by substantial evidence, for discounting plaintiff's subjective symptom testimony.

### III.    Medical Opinions

Plaintiff next argues that the ALJ's rejection of the medical opinions provided by Drs. Engstrom, Bates, and Cuccaro, was not supported by substantial evidence. Pl.'s Br. 11-14. This Court finds that the ALJ's assessments of the medical opinions was supported by substantial evidence.

#### A.    Legal standards

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence

to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### B. Dr. Shari Engstrom

Dr. Engstrom conducted a consultative examination on October 16, 2021. Tr. 4327. During her testing, she observed that plaintiff had no balance issues, had a mildly antalgic, reciprocal gait pattern, had full strength in all of his extremities, and had normal sensation to pinprick even though he reported having decreased sensation to the bottoms of his feet. Tr. 4330. Plaintiff also had a negative straight leg test, his reflexes were intact, there was no joint swelling or tenderness, but he did have a mild varus deformity of his right knee, and his right leg was one inch shorter than his left. *Id*. Dr. Engstrom further opined that plaintiff was able to squat and rise

with difficulty, that he had no difficulty rising from a sitting position nor getting on and off the examination table, that he was able to walk on heels and toes with difficulty, could not perform tandem walking, and could not hop on one foot bilaterally. Tr. 4330-31. Following her exam, Dr. Engstrom found that plaintiff could sit for three hours in an eight-hour day, stand for three hours in an eight-hour day, and walk for one hour in an eight-hour day. Tr. 4334. She also found that plaintiff could occasionally bend, never squat, and did not need an assistive device. *Id*. Lastly, Dr. Engstrom noted that plaintiff reported experiencing lower back and neck pain aggravated by prolonged sitting, limited bending, lifting, and twisting. *Id*.

The ALJ found the assessed limitations regarding plaintiff's total time sitting, standing, and walking to be an error for several reasons: it amounted to only seven hours in an eight-hour workday; it conflicted with another medical opinion; Dr. Engstrom's objective testing of full strength in his lower extremities, right knee stability, and mild antalgic gait did not support her limitations; Dr. Engstrom's note regarding increased pain with prolonged sitting is unsupported by plaintiff's own testimony; and that Dr. Engstrom's limitations are contradicted by plaintiff's daily activities. Tr. 764.

Plaintiff first argues that the ALJ improperly evaluated Dr. Engstrom's opinion as it relates to how many hours he is able to sit, stand, and walk in an eight-hour day. Pl.'s Br. 12. Plaintiff also argues that the ALJ's rejection of some of Dr. Engstrom's limitations was improperly based on plaintiff's subjective complaints and activities of daily living. *Id*. Lastly, plaintiff argues that the ALJ substituted her own judgment for that of the doctor's. *Id.*

This Court finds the ALJ's rejection of Dr. Engstrom's opinion was supported by substantial evidence.

As to Plaintiff's first argument, the ALJ did not discount Dr. Engstrom's seven-hour total limitation solely because the limitation was an assumed error. Dr. Engstrom provided no support for her finding that plaintiff could only sit for three hours, other than stating that plaintiff complained of increased back pain due to prolonged sitting. Tr. 4334; *see Ghanim*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008))). Furthermore, a previous medical opinion issued by Dr. Henderson was similar to Dr. Engstrom's, including testing results, and noted that plaintiff could stand and walk for a combined four hours, with no limitation on sitting. Tr. 635. Dr. Henderson further opined that plaintiff "appears to sit frequently and extensively so there should be no limitations with that." *Id*. This observation is supported by plaintiff's own testimony, where he affirmed the ALJ's observation that plaintiff sits for extended periods of time without issue. Tr. 75. Plaintiff also noted having no difficulty sitting in his function reports. Tr. 272, 1001.

Moreover, plaintiff's assertion that the ALJ substituted her own medical judgment for Dr. Engstrom's is unfounded. ALJ's are responsible for interpreting medical evidence into functional limitations, and plaintiff has provided no explanation for why the ALJ's interpretation of minimal postural limitations is unsupported. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). Therefore, the ALJ did not err in rejecting Dr. Engstrom's medical opinion as it relates to plaintiff's sitting, standing, and walking limitations.[5]

---

[5] Plaintiff further argues that the ALJ improperly rejected the sitting, standing, and walking limitations based on his activities of daily living. Pl.'s Br. 12. This Court need not reach this

C.     **State Agency Physicians**

Two agency physicians provided their opinions in July 2018 and April 2019, in which they assessed plaintiff capable of light work with four combined hours of standing and walking in an eight-hour workday reduced from six in the initial evaluation, sitting for six hours in an eight-hour workday, no climbing ladders, ropes, or scaffolds, frequent climbing of ramps or stairs, and occasional stooping, kneeling, crouching, and crawling. Tr. 766 (citing Tr. 95-96, 113-15). In April and November 2022, on remand, two other State physicians provided their opinions, noting that plaintiff was reduced to a sedentary level of work, noting that he could stand and walk for two hours in an eight-hour workday, sit for six hours in an eight-hour workday, occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, and occasionally stoop, knee, crouch, and crawl. Tr. 847-48, 869-70. Despite their different sets of evaluations, all of the State physicians believed plaintiff could return to his past relevant work as an estimator. Tr. 97, 116-17, 852-53, 871.

The ALJ found the 2022 opinions unpersuasive because the State Agency physicians were without plaintiff's records following his knee replacement surgery, in which plaintiff reported doing well, and that prior to his knee replacement surgery treatment providers found that he was capable of standing and walking for a combined four hours. Tr. 766-67.

Plaintiff argues that the ALJ improperly assessed the opinions of the State agency consultants, finding that plaintiff was limited to sedentary work. Pl.'s Br. 13. Plaintiff argues that the ALJ overlooked the fact that he had been suffering from degenerative joint disease and joint

---

issue because the ALJ's rejection of Dr. Engstrom's limitations was supported by substantial evidence on other grounds.

space narrowing in his right knee prior to his surgery. Pl.'s Br. 13. Plaintiff further argues that the ALJ rejected the sedentary opinions based on plaintiff's report of a singular incident of performing "a lot of yardwork." Pl'.s Br. 13 (citing Tr. 767). Plaintiff, however, overlooks the fact that Dr. Henderson provided his uncontested medical opinion during this same period, in which he found that plaintiff could stand and walk for four hours in an eight-hour workday, and could sit for an unlimited amount of time in an eight-hour workday. Tr. 635. Plaintiff does not dispute these findings. Dr. Engstrom also provided a similar opinion, with similar testing and test results. *See* Tr. 4329-34. While she differed in her sitting limitation, as was addressed above, she agreed that plaintiff was capable of standing and walking for four hours in an eight-hour workday. Tr. 4334. Following his knee surgery, plaintiff reported doing well, doing a lot of yard work, and also exercising a lot and believing he had "overdone it." Tr. 4741, 4775, 4802. What plaintiff asks for is a reweighing of the evidence, which this Court will not do.

Given the above, the ALJ's rejection of the State Agency physicians' opinions restricting plaintiff to sedentary exertional levels was supported by substantial evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("[W]e conclude [that the ALJ's] interpretation of the evidence is reasonable and we will not second-guess it.") (citation omitted).

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 30th day of June 2025.

_____
ANDREW HALLMAN
United States Magistrate Judge